### C. A. LIGON *v.* E. T. ALLEN.

1. ACTION. *Bankruptcy. Jurisdiction. Assignment. Legal title.*
   The legal title to a chose in action remains in the bankrupt until an assignee is appointed and the assignment made; and if the bankrupt court, by consent of all the creditors accepting a proposal from one member of a bankrupt firm to purchase all the assets in bankruptcy of said firm at a fixed price, conveys said assets to such purchaser by a decree of the court, he gets no title to a chose in action found among said assets, on which he can sue at law in his own name in the courts of this State.

2. BANKRUPTCY. *Assets. Composition.*
   The result of a composition under the United States bankrupt law is, that the legal title to the choses in action remains in the bankrupt. If the composition is before an assignment, it is never divested; and if after, it is revested.

ERROR to the Circuit Court of Hinds County.

Hon. S. S. CALHOON, Judge.

This action was brought, on November 17, 1877, in the name of B. T. & C. A. Ligon, for the use of C. A. Ligon, but a plea having been filed that the plaintiffs had no title, it was amended, by leave of court, on January 16, 1879, into the name

of C. A. Ligon alone; and to the amended declaration the defendant pleaded that the plaintiff had no title.

The evidence on the question of title is set out in the opinion of the court. The order appointing the provisional assignee, empowered him to collect the debts, and the decree quoted in the opinion directed the register and assignee to turn over the assets to C. A. Ligon. The assets were received by C. A. Ligon from the assignee, which fact the notes that he gave for the $5,000 also recited.

*J. A. Brown* for the plaintiff in error.

1. On its face, the decree vests the legal title in C. A. Ligon, and is a written assignment within the Code of 1871, sect. 670. The plaintiff, a purchaser at a judicial sale under a decree *in rem*, has a right to sue, unless the proceedings are void.

2. The adjudication, followed by the warrant to the messenger, gave the court full *original* jurisdiction. Const. U. S. art. 1, sect. 8; U. S. Bank. Law, art. 6, sect. 1. The subsequent proceedings were all one suit, ending in the decree and sale which vested in C. A. Ligon the title. The court having jurisdiction of the subject-matter and the parties, its decree, however erroneous it may have been, is not void. *Zeigler* v. *Shows*, 78 Pa. St. 362; *Williams* v. *Armroyd*, 7 Cranch, 423; 6 Abb. Nat. Dig. 34 *et seq.*

3. The decree and sale were not only within the jurisdiction of the court, but also regular, in strict accordance with the bankrupt law; and therefore not even erroneous. The sale could be made by an officer of court. No assignee was necessary. *In re Vila*, 5 Law Rep. 17; *In re Metzler*, 1 Bank. Reg. 39. But, if one was required, the provisional assignee, to whom the choses in action were given by decree, with power *to collect*, who, by the subsequent decree, is directed, as *" assignee,"* to turn over to C. A. Ligon the choses in action, and from whom, as the record shows, C. A. Ligon received this with the other accounts, is assignee *pro hæc vice*, and having been so held out by the judge and register, the parties to the proceeding, which, as it was *in rem*, includes the defendant, Mrs. Allen, are

bound thereby. 14 Bank. Reg. 78. The two decrees, signed and sealed by the judge of the bankrupt court, convey the title, first, from the bankrupts to the assignee, and then from him to the plaintiff in this suit. *Zantzinger* v. *Ribble*, 4 Bank. Reg. 728.

The case of *Hampton* v. *Rouse*, 22 Wall. 263, has no application. The bankrupt, between the adjudication and the assignment, is a trustee for the parties, creditors and others, to the bankruptcy proceedings. But when the bankrupt court, as in the case at bar, has, by decree and sale, finally vested title to any part of the bankrupt's assets in a purchaser, his title cannot be collaterally attacked, but must be recognized by the State court. *Smith* v. *Engle*, 14 Bank. Reg. 481, 486, 491; *Miller* v. *Mackenzie*, 13 Bank. Reg. 499, 500; *Pool* v. *McDonald*, 15 Bank. Reg. 560; Rorer on Jud. Sales, 17, 42; *Grignon* v. *Astor*, 2 How. (U. S.) 338 *et seq.*

*Harris & George*, for the defendant in error.

1. C. A. Ligon has not the legal title, and cannot sue at law. The judge, under the Bankrupt Act, has no power to make an assignment, except to the assignee. Whether the title was in the assignee or in the Ligons, the court had no power to divest it by selling the assets. The most the court could do was to authorize the assignee to sell.

2. The sections of the bankrupt law cited by counsel do not apply. There is nothing in the composition clauses which authorizes a sale of the assets. This was in no sense a composition. The sections which relate to the court's power to authorize the assignee to sell uncollectible claims does not apply, because this sale was by the court; and that which relates to perishable property has no bearing, because this was a sale of the whole estate. The assignee is, under the decree, in no sense a seller; the decree merely *directs* him to *deliver*, after the sale shall be made. The order is, in fact, an attempt on the part of the court to act as vendor. The judge, in every essential particular, does all which belongs to the seller's part.

3. There is a failure to make the sale, so as to confer a

legal title to an open account on C. A. Ligon, our statute requiring such an assignment to be in writing, in order to confer the legal title. There is nothing in the bankrupt law which assumes to disregard the law of this State as to conveying titles to property situated therein. But if it could be construed to confer on the court power to convey in any manner it saw proper, this, though binding on the United States courts, would not bind the courts of Mississippi on the question as to who should be plaintiffs therein. The State creates the courts, and prescribes their jurisdiction and mode of procedure. No power can control the State in these matters. That the Constitution and laws of the United States are supreme, does not affect the question in what court, or in what form, the action should be brought. The State fully complies with her duties when she recognizes the right, and affords a proper court in which to enforce it. It is not for Congress to say that such a right shall be enforced in a State court of common law or equity.

CHALMERS, J., delivered the opinion of the court.

B. T. and C. A. Ligon were merchants and partners in the city of Jackson. Upon their own petition they were adjudicated bankrupts by decree of the District Court of the United States for the Southern District of Mississippi. A temporary trustee (styled a provisional assignee) was appointed to take charge of their stock of goods until an assignee could be chosen, and power was vested in this temporary appointee to make sales for cash, from day to day, in the usual course of retail business.

A meeting of creditors, for the election of an assignee, was duly convened, and at that meeting a proposition was made to and accepted by the creditors, to the effect that C. A. Ligon, one of the bankrupts, should pay into the hands of the register the sum of $5,000, that the bankrupts should be discharged, and all the assets should become the property of C. A. Ligon ; in other words, that C. A. Ligon should purchase the assets for $5,000, and the bankrupts be discharged.

This proposition, being accepted by the creditors, was reported to and confirmed by the court, the order of confirmation reciting that " a requisite number and value of the creditors " had consented, in writing, to the proposition. It was further ordered and directed that the register should turn over and deliver to C. A. Ligon the entire assets of the firm, " to be owned and controlled by him, after such delivery, as his own individual property."

Ligon paid the $5,000 and took possession of the assets, among which was the account sued on in this case. He has brought the suit in his own name.

Can it in this form be maintained? That he is the equitable owner of the account is not disputed, but it is objected that he is not clothed with the legal title.

We think the objection is well taken. The proceedings in the bankrupt court, by which he became the purchaser of the assets, were evidently based upon the composition clauses of the Bankrupt Act, though not strictly in form a composition. They certainly cannot be supported by any other clauses of the law.

Now, the legal title to the property of a bankrupt, real or personal, is wholly unaffected by the adjudication of bankruptcy. It remains in the owner until the appointment of an assignee, and is not divested except by such appointment, followed by a written assignment by the register, or some equivalent act by the court transferring title to the assignee. *Hampton* v. *Rouse*, 22 Wall. 263 ; *Zantzinger* v. *Ribble*, 4 Bank. Reg. 728.

The title to the assets of B. T. & C. A. Ligon remaining in the firm, the court has no power to divest it except by the appointment of an assignee. If we leave the composition features of the law out of view, or if we regard the arrangement made as amounting to a composition, the court was equally powerless to affect the legal title. A composition is a mere conventional agreement between the creditors and the bankrupt, by which, in consideration of a sum paid, the cred-

itors release their demands upon the property and upon the debtor. If entered into, and approved by the court, before the divestiture of title to the assets by the appointment of an assignee, it has no effect whatever upon the title, but leaves it just where it was, to wit, in the bankrupt. If entered into and approved after the appointment of an assignee, it amounts to a divestiture of the assignee's title, and a reinvestiture in the original owner.

In any point of view, therefore, it follows that the legal title to the assets of the firm of B. T. & C. A. Ligon has ever remained and is now in said firm, and not in C. A. Ligon individually.

It is urged that this view is a refusal to acknowledge the legal force and effect of the decree of the bankrupt court, which, having been rendered with full jurisdiction of the subject-matter and of the parties, is conclusive.

By no means. We recognize to the fullest extent the rights acquired by plaintiff, by virtue of his purchase in the bankrupt court, and are prepared to enforce them; but when he seeks our aid, he must do so in the mode and manner prescribed by our laws. The bankrupt court cannot confer upon its litigants a right to disregard the forms of actions observed in the State courts, and when we are called upon to enforce rights acquired in that court, we must be permitted to ascertain the nature of the title there acquired, with a view of determining the form of action to be here observed.

Affirmed.